IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY R. KOSCHNICK,

              Plaintiff,

v.

GOVERNOR JAMES DOYLE, in his
official capacity as Governor of the State
of Wisconsin, KEVEN KENNEDY, in his
official capacity as Director of Wisconsin's
Government Accountability Board and
DAWN MARIE SASS, in her official
capacity as Wisconsin State Treasurer

              Defendants.

ORDER

09-cv-767-wmc

---

On December 1, 2009, defendant Governor James Doyle signed into law the "Impartial Justice Act" ("the Act"), 2009 Wisconsin Act 89, which governs the public financing of campaigns for the Office of Justice of the Wisconsin Supreme Court beginning May 2010.[1]  Plaintiff Randy Koschnick, a former and at least, potentially, future candidate for the Office of Justice, brings this civil action challenging the constitutionality of the law.  Koschnick contends that the Act violates the First and Fourteenth Amendments of the United States Constitution by penalizing the speech of privately-financed candidates for the Wisconsin Supreme Court, as well as the speech of their supporters.  Specifically, Koschnick challenges the Act's provisions providing

---

[1] The Act was originally to take effect December 1, 2010, but the effective date was later amended to May 1, 2010.

1

supplemental, matching funds to candidates electing public financing, which are triggered when the disbursements of a privately-financed candidate, or his or her supporters, exceeds a certain level -- effectively and unconstitutionally chilling the speech of private candidates and independent, third-parties.

Plaintiff filed a motion for judgment on the pleadings (dkt. #14); in opposition, defendants claim entitlement to judgment on the pleadings as well (Def.'s Opp. Br. (dkt. #23) at 17). Because plaintiff's future candidacy is at this time too uncertain to establish his standing to challenge the Act, however, the case will be dismissed.

BACKGROUND

The Impartial Justice Act is a campaign finance law pertaining only to elections for the Office of Justice for the Wisconsin Supreme Court. The Act creates a "Democracy Trust Fund" ("the Fund") for publicly financing such campaigns. The Fund is financed by two sources: (1) voluntary taxpayer contributions, and (2) if this does not generate sufficient funds, appropriations from the state's general fund. Wis. Stat. § 20.855(4)(bb). Candidates are free to choose whether to participate in the Fund or to conduct privately financed campaigns.[2]

To be eligible to participate in the Fund, a candidate must satisfy certain prerequisites. During an initial qualifying period, the participating candidate must

---

[2] For the remainder of the opinion, candidates who elect public financing are referred to as "participating candidates" and those who elect to finance their campaigns privately are referred to as "non-participating candidates."

2

collect qualifying contributions of $5 to $100 from at least 1,000 separate contributors. Wis. Stat. §§ 11.501(16); 11.502(2). Cumulatively, a candidate must collect at least $5,000, but no more than $15,000. Wis. Stat. § 11.502(2). Additionally, during an initial exploratory period and a qualifying period, participating candidates also may accept up to $5,000 in "seed money contributions," which is defined as contributions under $100 or money from a candidate's personal funds. Wis. Stat. § 11.508(1).[3]

Once the exploratory and qualifying periods close, a qualifying candidate may not accept any further private contributions. Wis. Stat. § 11.506(1). A non-participating candidate, however, may continue to accept private contributions throughout his or her campaign, but not more than $1,000 from each campaign contributor. Wis. Stat. §§ 11.26(1)(am) and (an).

Upon certification, a participating candidate becomes eligible to receive public grants from the Fund. The amount a participating candidate receives depends on the stage and competitiveness of the campaign. If there are no challengers, the participating candidate receives no public funds. Wis. Stat. § 11.511(4). A participating candidate facing opposition receives $100,000 for the primary election and $300,000 for the general election. Wis. Stat. §§ 11.511(2) and (3).

Under the Act, a participating candidate is also eligible to receive supplemental funds if the expenditures of a non-participating candidate or third-parties exceed

---

[3] A candidate may make expenditures derived from seed money during the exploratory and qualifying period, but not during the primary or general election campaign periods. Wis. Stat. § 11.508(2).

threshold amounts. The "trigger" for supplemental funds occur: (1) when a non-participating candidate "receives contributions or makes or obligates to make disbursements in an amount that is more than 5 percent greater than the public financing benefit applicable to an eligible candidate;" "[w]hen the aggregate independent disbursements made or obligated to be made by a [third-party] against an eligible candidate for office or for the opponents of that candidate exceed 120 percent of the public financing benefit for that office." Wis. Stat. §§ 11.512(1) and (2), 11.513(2). Once supplemental funds are triggered, the participating candidate receives a supplemental grant equivalent to the non-participating candidate's or third-party's money in excess of the initial public financing benefit, capped at three times the initial grant -- that is, the total, additional public supplement cannot exceed $300,000 in the primary election and $900,000 in the general election. Wis. Stat. §§ 11.512(2) and 11.513(2). If the non-participating candidate or third party does not exceed one of the trigger amounts, the participating candidate receives no matching funds.

The Act also requires certain reporting requirements to facilitate the distribution of matching funds. A non-participating candidate is required to report to the Government Accountability Board ("GAB") all contributions or expenditures exceeding 105 percent of the initial public financing benefit. Wis. Stat. § 11.512(1). Once the 105 percent threshold has been surpassed, the non-participating candidate must report each $1,000 of contributions received or expenditures made thereafter. *Id*. These reports are normally due at the next, regular reporting period, though contributions or expenditures

4

made within six weeks of the primary election date, must be reported within 24 hours. *Id*. Similarly, all independent expenditures in excess of $1,000 must be reported and, if made within six weeks of the primary or general election, must be reported within 24 hours. Wis. Stat. § 11.513(1). Another report is required after each additional $1,000 expenditure. *Id*. Because participating candidates forego private funding after the qualifying period, these additional reporting requirements do not apply to them, though they are still bound by general registration and reporting requirements. *See* Wis. Stat. §§ 11.05, 11.06.

Plaintiff Randy Koschnick filed this lawsuit on December 21, 2009, seeking a declaratory judgment that the Act violates the United States Constitution and a permanent injunction prohibiting the State of Wisconsin from enforcing the Act. Koschnick is currently a Wisconsin Circuit Court Judge. He ran for Justice of the Wisconsin Supreme Court in 2009, using private funds and committee contributions. Koschnick also alleges that he "intends to become a candidate for the Office of Justice in future elections; that he "continues to explore these possibilities;" and that should he run, he "does not intend to rely on public campaign financing and expects to expend funds received from committees." (Am. Compl. (dkt. #4) ¶¶16-17.)

Before committing to running again, however, Koschnick asserts "it is essential to . . . know the limitations and obligations related to fundraising and other forms of speech." (*Id.*, ¶18.) He alleges that the Act creates an asymmetrical campaign finance scheme that imposes an unconstitutional burden on the free speech rights of non-participating

candidates and their supporters.[4]

OPINION

As a threshold matter, this court must ensure that it has jurisdiction to hear plaintiff's claims. Article III of the Constitution confines federal courts' jurisdiction to the resolution of cases and controversies. *Davis v. Federal Election Commission*, 554 U.S. 724, 732 (2008). "Unless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state or local law is constitutional." *Shirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010).

One element of the case-and-controversy is open to question here, that of standing -- "the personal interest that must exist at the commencement of the litigation." *Davis*, 128 S. Ct. at 2768 (internal citation omitted). "Because standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III, [a court] must consider [that] jurisdictional issue even if the parties have not raised it." *Shirmer*, 621 F.3d at 584 (internal citation omitted). In fact, "if there is no Article III standing, [a] court is obliged to dismiss the suit even if the standing issue has not been raised." *MainStreet Org. of Realtors v. Calument City, Ill.*, 505 F.3d 742, 747 (7th Cir. 2007).

While not initially raised by plaintiff or defendants, plaintiff addresses the standing issue in his reply brief in response to the *amici curiae* brief filed on behalf of

---

[4] At the time this lawsuit was filed, there was at least a possibility of Koschnick becoming a candidate in the election for a seat on the Wisconsin Supreme Court scheduled for April of 2011. Although Koschnick never averred his intent to do as much, it is now a fact that Koschnick did not run in that election. He, therefore, is not a candidate and cannot become a candidate until the next election, which will not occur until the Spring of 2013.

Common Cause in Wisconsin, League of Women Voters of Wisconsin Education Fund and Wisconsin Democracy Campaign.  (*See* Amicus Br. (dkt. #25) at 8-13.)

> To establish standing a plaintiff must have:
>
> (1) an 'injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) a causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the challenged action of the defendant, not the result of the 'independent action of some third party not before the court'; and (3) a favorable decision likely will redress the injury.

*O'Sullivan v. City of Chicago*, 396 F.3d 843, 854 (7th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where a plaintiff brings a pre-enforcement, facial challenge of a law's constitutionality under the First Amendment, the plaintiff need not risk arrest to present a justiciable controversy, but "must assert more than a wholly speculative possibility of [ ] consequences."  *Schirmer*, 621 F.3d at 586.  In other words, "'[w]hen plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court.'"  *Id.* (quoting *Babbit v. United Farm Workers*, 442 U.S. 289, 298-99 (1979) (internal quotation omitted)).

More specifically for purposes of this lawsuit, because plaintiff is seeking to invalidate statutory provisions in light of a prospective injury, the threatened injury must be "real, immediate, and direct."  *Davis*, 554 U.S. at 734.  A quick comparison of Koschnick with the plaintiff in *Davis*, 554 U.S. at 734, shows that there is no real,

immediate, and direct threatened injury here.

Judge Koschnick challenges the possible impact on him of the following sections of the Impartial Justice Act contribution limits, §§ 11.26(1)(am) and (2)(an); aggregate committee limits, §§ 11.26(9)(a), (b) and (ba); non-participating candidate triggered matching funds provision, § 11.512(2); non-participating candidate's additional reporting requirements, § 11.512(1); independent disbursement triggered matching funds provision, § 11.513(2); and attribution provision, § 11.522(2). While challenging several different sections of the Act, Koschnick's basis for standing as to each relies on the same factual allegations: (1) he was previously a privately-financed candidate for a seat on the Wisconsin Supreme Court; (2) he intends to proceed as a privately-financed candidate for a seat sometime in the future; and (3) several of the Act's provisions would chill his political speech as a candidate or that of his supporters.[5]

Turning to the candidate in *Davis*, he had already declared his candidacy, as well as "his intent to spend more than $350,000 of personal funds in the general election campaign whose onset was rapidly approaching." 554 U.S. at 734. In finding standing, the United States Supreme Court found the candidate's intent to spend more than $350,000 the real, immediate and direct threat of injury in the form of his opponent receiving contributions on more favorable terms. *Id.* At the time of the lawsuit here, plaintiff Koschnick had not declared his candidacy. Rather he alleged his intent at some future time to run again. Koschnick also did not declare that he would spend or raise

---

[5] "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief." *Davis*, 554 U.S. at 734 (internal quotations omitted).

enough money to trigger the matching funds provisions. Indeed, at this point, one can only speculate whether he would even face a candidate who elects to participate in public financing, much less one likely to receive a supplemental grant based on substantial expenditures by non-participating candidates or their supporters.

In the end, plaintiff's allegations rely on one too many "if-then" statements to establish a threatened injury that is real, immediate and direct: *if* he were a candidate again in two years, then he would probably choose private financing; *if* he were a privately-financed candidate, then he would probably face a publicly-financed opponent or private party opposition; and *if* he faced such opposition, they would trigger the statute's matching funds provision, § 11.512(2). These are too many hypotheticals, and too little concrete facts on which to judge the possible constitutional impingement on plaintiff's right to free speech.

In *Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003), the Seventh Circuit stated in the context of a claim of mootness that a candidate need not "run in every election in order to keep his suit alive." *Id.* at 722-23. In its holding today, this court does not intend to undermine the parallel proposition that a candidate need not run in every election to have standing to challenge election laws that may run afoul of free speech rights. But that is not Koschnick's position; rather he was *not* a candidate at the time of suit, nor was there *any* indication that he might be soon. There is an important difference between saying that a candidate need not run in every election after the commencement of a suit and saying that a person need not be a candidate when suit is brought or at least soon to

9

be so.

In *Majors*, the Seventh Circuit compared a candidate bringing suit to a pregnant woman bringing an abortion suit. 317 F.3d at 722-23. In both circumstances, the plaintiffs do not need to remain in that state or be deprived of standing to continue the suit. *Id.* ("A candidate plaintiff no more has a duty to run in every election in order to keep his suit alive than an abortion plaintiff has a duty to become pregnant again at the earliest possible opportunity in order to keep her suit alive."). Continuing the comparison, however, a woman not currently pregnant would not have standing to bring suit challenging an abortion law based only on the speculative allegation that she might get pregnant in the future and need an abortion, even if she had been pregnant sometime before. Absent that, there is no threatened injury that is real, immediate, and direct.

Even accepting plaintiff's conclusory allegation that the provisions result in some "chilling effect" on his political speech (or even more specifically, decision not to run at all), simply because they could hypothetically apply to his future candidacy, the fact is that the effect stems from a speculative, general possibility that the provisions may apply to him, which is by itself insufficient to create the type of threatened harm necessary to establish standing in the first place.[6] *See J.N.S., Inc. v. State of Ind.*, 712 F.2d 303, 306 (7th Cir. 1983) ("Not every chilling effect on protected expression caused by a general

---

[6] When deciding standing at the pleading stage, the court will "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004). Nonetheless, the court is never bound to accept as true legal conclusions couched as factual allegations. *See Bante v. United States Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

possibility of enforcement creates a justiciable controversy."). Put simply, plaintiff lacks standing to bring a pre-enforcement challenge against the matching funds and additional reporting requirements provisions because his previous and intended conduct does not create a reasonable probability that his free speech will be chilled. *See, e.g.*, *MainStreet Org.*, 505 F.3d at 745 ("'All that a plaintiff need show to establish standing to sue [in the Article III sense] is a reasonable probability -- not a certainty -- of suffering tangible harm unless he obtains the relief he is seeking in the suit.'") (quoting *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995) (alteration in original).) This is not a heavy burden, but it is plaintiff's burden and the court finds that plaintiff's basic, conclusory allegations fall short of even the "modest probability of injury" necessary to satisfy the injury in fact requirement. *Wiesmueller v. Kosobucki*, 571 F.3d 699, 703 (7th Cir. 2009).

With respect to the remaining challenged provisions, plaintiff has not specifically alleged that he intends to make any independent disbursements to or for some privately funded candidate. Instead, plaintiff alleges that, as a probable, privately-funded candidate, he would be harmed because of the chilling effect the Act's matching funds provision and contribution limits would have on his supporters' speech, in turn discouraging or impermissibly limiting their financial support of his candidacy. In general, "a plaintiff who is harmed by the infringement of another person's right of free speech has standing to challenge that infringement." *Majors*, 317 F.3d at 722. For all the reasons already discussed, however, the threatened harm to plaintiff is only speculative at this time because there are no factual allegations to support that plaintiff would be

subject to such harms.

Finally, given that the constitutionality of trigger provisions is currently before the Supreme Court in *McComish v. Bennett*, 131 S. Ct. 644 (2010), there is a real possibility that the issues on which Koschnick seeks guidance will be forthcoming, long before he will need to decide on another run for the Wisconsin Supreme Court.[7] Moreover, the court would also be remiss in not noting the precarious nature of the continued viability of the "Democracy Trust Fund" itself. At least as proposed, that fund is likely to be decimated under the Governor's current budget.[8] As a result, the suit was not only lacking when filed, its prospect of impinging in the future is speculative at best.

---

[7] In fact one of the questions presented in *McComish* is directly on point:

> Whether *Citizens United v. Federal Election Comm'n*, 130 S. Ct. 876 (2010), and *Davis v. Federal Election Comm'n*, 128 S. Ct. 2759 (2008), require this Court to strike down Arizona's matching funds trigger under the First and Fourteenth Amendments because it penalizes and deters free speech by forcing privately-financed candidates and their supporters to finance the dissemination of hostile political speech whenever they raise or spend private money, or when independent expenditures are made, above a "spending limit."

*McComish v. Bennett*, No. 10-239, http://www.supremecourt.gov/qp/10-00239qp.pdf.

[8] "Public funding for Wisconsin Supreme Court races would dwindle under the proposed state budget. In his 2011-'13 budge, Gov. Scott Walker is proposing to replace all tax dollars with voluntary contributions to the program that is financing the campaigns of both candidates in the April 5 election for the high court. . . . Walker's budget would combine the two public financing programs, eliminate all tax dollars for them and end the matching grants for court candidates." Larry Sandler, *Budget Defunds Elections*, Milwaukee Journal Sentinel, Mar. 27, 2011, www.jsonline.com/news/statepolitics/118749889.html.

ORDER

IT IS ORDERED that:

(1)   Plaintiff Randy R. Koschnick lacks standing to pursue the claims raised in his amended complaint and this case is DISMISSED without prejudice for lack of subject-matter jurisdiction.

(2)   Plaintiff's motion for judgment on the pleadings (dkt. #14) is DENIED as MOOT.

(2)   The clerk of court is directed to close this case.

Entered this 31st day of March, 2011.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge